Good morning, Melanie McKay on behalf of the petitioner and the appellant, Mr. Israel Lopez Simon. May it please the court, I'd like to reserve two minutes of time for rebuttal. Okay, and watch the clock, and I'll try to help you. Okay, thank you. I'd like to begin with the BIA's decision on the motion to reopen. The BIA first erred when it failed to accept the affidavits as true. Importantly, the government does not dispute that if the statements in the affidavits are accepted as true, then the BIA's decision must be reversed. Rather, the government is disputing whether the statements must be accepted as true in the first instance. And this Court answered that question in De Silva. In that case, the petitioner's affidavit merely stated, I recently found out that they killed my brother by mistake, thinking that it was mean. And the BIA did not accept that as true. It said it required additional evidence proving that it was true. And this Court reversed. Could you tell me, was Mr. Lopez represented by counsel in that proceeding? In De Silva? I'm sorry. Before the ‑‑ when he submitted his ‑‑ before the BIA, was he represented by counsel? Yes. Okay. When he moved to reopen the case, he was represented by counsel. Right. Okay. So returning back to De Silva, the BIA found that the ‑‑ But wasn't that a ‑‑ that's not a fact. That's just a conclusion of the witness, right? No, I would disagree. Why is that? On a motion to reopen, it's important that the affidavit ‑‑ What if he says, in my opinion, the sky is black? The BIA has the authority to conclude that an affidavit is inherently unbelievable. And in that instance, it can ignore the affidavit or regard it as being untrue. But that finding must be made explicitly. Here, of course, there is no finding that the affidavits are inherently unbelievable. It's just speculative. Speculative. Well, the BIA calls it speculative, that's true. I understand. But there's been no fact ‑‑ the BIA is not a fact finder. There's been no fact hearing. That's why it's required on a motion to reopen. If it's going to disregard affidavit evidence, it can only do so if the affidavit has been found to be inherently unbelievable. I'd also add, too, here that the affidavits did not just say my cousin was mistakenly murdered in Mexico. They say a lot more. They explain why my client believes his cousin was mistakenly murdered. And it's in the briefs. But among other things, he explains that he used his cousin's name since he was 15 years old. His mother calls him by that name. His wife calls him by that name. The affidavits further explain that the cousin ‑‑ And the implication is that he was the one that they were actually after? Correct, Your Honor. The affidavits further explain that the cousin was involved in construction his whole life. He was a hardworking man. He was not involved in gangs ever in his life, and thus could not have been the intended target of the gang. Whereas, of course, the gang did ‑‑ Of course, we don't know there was an intent. That was one of the issues, in terms of speculation. We don't know he's the intended ‑‑ anyone's the intended target of a gang. We know that the cousin drove away from the house, and we don't know when and how. But then we know, tragically, he ends up dead, right? Correct. But these are all factual questions. The BIA cannot determine on a motion to reopen whether or not the facts asserted in the affidavit is true, because there's been no factual hearing. I'm talking not so much about what ‑‑ Assuming everything he said is true, there's still a lot of speculative gaps to link him up with the cousin, the timing, when it occurred. And that's, I think, what the BIA was talking about. Right. Well, and the BIA, I think, was kind of piggybacking off of its opinion in the first filed appeal, where it held that this is all speculation. And I would note that credible testimony is not speculation. In fact, credible testimony is alone sufficient. And, for example, in this Court's opinion in Garces at 312 Fed Appendix 12, the Petitioner merely testified that she received death threats on the phone, that while she was away from her house, someone shot it up, riddling it with bullets, and then finally a person drove by and pointed a gun at her and then drove away. And there, too, the government said this is all speculative. How do we know these incidences are related to one another? And this Court said that the only inference to be drawn from the evidence is that the incidences are related. There's no evidence to suggest that they're unrelated. And the same is true here. The only evidence in the record is that these incidences are related. The gang, everyone involved in the gunfight was arrested, including the man who shot my client in the leg. The only person who wasn't was my client. And this is the only evidence of any interaction that my client ever had with gangs. And so when he goes to Mexico and he's warned, hey, the gang knows you're here, you need to watch out, there's only one reason why that could be the case. Subsequently, on at least two different occasions, the gang is standing outside his house. And importantly, one of the people outside his house was actually involved in the gunfight. This is a person who my client has. A person he recognized from the U.S.? Exactly, Your Honor. I'm sorry, say that again? That person was involved in Mexico? One of the people in Mexico. On at least two occasions. One of the people that did what? On at least two occasions, the gang stood outside his uncle's house. And one of those individuals was involved in the gunfight back in the United States, which my client witnessed. And he recognized him from his involvement in that gunfight. So he knows him to be armed and dangerous. My client, again, I'll cite to Garces, was not required to walk outside the house and provoke some kind of armed confrontation. That's not required here in the Ninth Circuit. He claims that this is a social group that is entitled to protection, is that? In our first filed appeal, correct. That is the contention, that informants are a particular social group. There is a lot of briefing about whether or not my client is an informant or not. Of course, I know a lot of out-of-record information that the IJ should have but did not inquire about, given that this was a pro se petitioner and this record should have been fully and fairly developed, yet it wasn't. So even a mere question, were you an informant or not, was not even asked. Regardless, when the BIA is applying the two-part test, the question, even if you're dealing with an imputed characteristic, is whether individuals Do you equate being a witness with being an informant? No, Your Honor. The particular social group to which my client belongs, as demonstrated in the record, is someone who cooperates with police, as, for example, demonstrated in this police report. So that's a snitch, for example, a person who cooperates with I guess I was having trouble divining that he was, quote, cooperating as opposed to just being a witness as to what happened. Well, Your Honor, the record, I will admit, was not fully and fairly developed as it should have been. If it had been, you would have been privy to a lot more information, as, for example, I'm aware of, but which is not a part of this record. Again, this is all with respect to the Well, does the record show that he, in fact, cooperated with police? I know that everyone was arrested after, presumably after the shootout, but does The record shows that fact. And it also states on page 39 of the hearing, the May 2011 hearing, it states that there was a police report which was generated. There's no follow-up questions posed. How many times did you talk to the police? What did they ask you? What did you tell them? So the extent to which he cooperated with police is not in the record that's before you. Do you want to save your remaining time? I would. All right. May it please the Court, I'm Jason Weiskopf for Respondent Attorney General. In this case, the Court should deny the two petitions for review. Start with the underlying petition. Substantial evidence supports the agency's no past persecution finding. Specifically, the experiences the petitioner experienced did not rise to the extreme level of persecution. Persecution is an extreme concept generally demonstrated by the infliction of harm and suffering. Here, the whole basis of petitioner's claim roots around the two instances where the persons were loitering outside his uncle's home and an attempted robbery. These do not rise to the extreme level of persecution. As a general rule, this Court has found that past persecution is compelled in instances generally where there is multiple beatings, detention, things like that. Of course, he says the murder of his cousin is an act that should have been taken into account because he asserts that he was actually the intended target. Well, as far as you're referring to the motion to reopen? The murder in the, yeah. Yeah, the motion to reopen is a separate, a whole separate incident. You can't actually constitute that because this is the underlying petition. The underlying petition for past persecution just involves those three incidents. The motion to reopen, that was the incident in regards to that. So they're two separate petitions. So past persecution is just in regards to those incidents. If you want to talk about the motion to reopen more, I can go into that if you prefer. Well, he's just asking to have his case reheard. Oh, as far as going back, Your Honor. Well, we can talk about whether the case should be reopened as far as, again, you have the Board operating on an abusive discretion standard, whether the Board abused its discretion in denying a motion to reopen. So to be able to show that a motion to reopen should be granted, the Petitioner has to show reasonable likelihood that their petition will be granted. And counsel suggests that you've acknowledged that if the affidavits were to come in and not be deemed speculative, that that would be enough to reopen. Do you agree with that? Oh, yes, Your Honor. If there were instances, for example, you can have certain. No, no. This case. This case, yes. Your Honor. Oh, if we were to determine that the speculative determination is wrong as a matter of law, then he would at least get his case reopened and. Yes, Your Honor. So, for example, if these were deemed to be factual, if it was deemed to be a factual finding, necessarily that, yes, the aunt somehow had a factual knowledge that gang members were involved, that I can go through the suppositions if we need to. So it's basically. My question then is, can't circumstantial evidence be evidence that's not necessarily speculative evidence? I think at some point there's a line, right? But here, what do you have to assume? You have to assume the killers were gang members. You have to assume they're members from the gang in the Phoenix shooting. You have to assume they suspect the Petitioner informed on them. You have to assume they still believe this is important 12 years later. You have to assume where the Petitioner uses that name in the United States, his cousin's name. So these are the suppositions. There is something, there would be something specific. For example, maybe the aunt had conversations with her nephew about gangs being after him, something like that. Direct knowledge as opposed to these affidavits, which are bald and just saying. He's warned, he sees a gang member outside the house in Mexico, and one that he saw during the incident in the United States, and he's using the name. And then the cousin, who uses his name, is shot and killed after leaving that house. So isn't that circumstantial evidence? I mean, putting it all together could lead to the conclusion of X. If you mean like 9 or 10 steps, that's it. I guess that's the point. What you see the court, where you actually see the court finding it is where you have an affidavit, which has a more detailed, you know, basis for it. For example, the aunt has direct knowledge and testifies as to that, maybe had conversations with the nephew in regards to things like that. But here you have just speculation and a long line of suppositions to do that. Well, it's not speculation what happened in Mexico, is it? It's not speculation, maybe just from your standpoint, but he did cooperate with police. Oh. Gang members involved in the shootout were all arrested shortly thereafter. What the record actually says, the police came to interview him after he was shot. He was in a coma for two weeks after the shooting. They came to interview him. What does he say? He says it was an error or a mistake. I was shot in the leg accidentally. There's nothing in the record showing that he cooperated. There's nothing in regards to that. And opposing counsel said that multiple times. She's privy to extra record evidence. But there's nothing in the records regarding that he was actually informed. But I can see why that would not want to be made public information. Correct, Your Honor. But, I mean, even in regards to that. So, for example, the reasonable likelihood. This court, again, hasn't. For example, Henrique Rivas. What was the particular social group being considered there? Actual informants in court. Not imputed informants. Actual witnesses. Actual witnesses who have testified in courts. And, again, in Henrique Rivas, what the court did is it didn't make a specific finding that that was a socially distinct group. It said the BIA considered the wrong group. It remanded for them to reconsider that group. Then you have the BIA come out with a matter of WGR, a matter of MEVG, saying that that's initially a factually finding that the board has to make. So, again, you don't have the board out there making even that an actual informant is a particular social group. That's how you weave back in the reasonable likelihood finding. So what you have here is you never have that. There's no exhaustion. There's no exhaustion. He testifies. According to the PSR, he testifies, I guess you'd say, as a character witness for his friend, right? So he testifies in the positive. He testified. At the sentencing hearing. Didn't he testify? No. There's no actual testimony in this case, Your Honor. The only thing that's in the record is the police come to talk to him when he's in the hospital. Right, but I thought later there was an excerpt from a pre-sentence report where he actually supported the guy who shot him. Is that true? That's not what I'm aware of, Your Honor. Not that's actually in the record that I'm aware of. Okay. It's in the brief, then. Yeah. So, for example, all that it says in the record is he is in unconscious for two weeks. Right. They come to him, ask him. He says, oh, the legs. It was an accident. It was an accident. Nothing else in the testimony about that. Nothing else in the testimony about an actual informant. Also noted that he's never before the Board claimed that he was an actual informant. He never exhausted that to the Board. That's completely new in this instance. So, again, just in regards to the motion to reopen, there's no objective evidence of the identity of the killers. I mean, the idea, again, it's complete supposition that the killers were gang members, that they were those specific Phoenix gang members. And, again, the best thing you have is the aunt's affidavit that they present. The aunt says, my nephew was never involved with gangs. It is common. I mean, it seems to me it's well known that there is a great degree of retribution in Mexico, retribution against informants. It seems like that's well known. And I don't know how much specificity you need other than simply connect the dots in a case like this. And the bar before the BIA is fairly low. It's a prima facie case of entitlement, isn't it? It is prima facie evidence. But, again, Your Honor, you have to think about what if the case was reopened, what the person would have to show. They'd have to show the killers were gang members. They were the gang members from the Phoenix shooting. And then keep going onwards, that they were aware that, you know, the cousin was using this name. There's no record evidence that they why they would know that, how they would get down that. Again, it's, yes, there's a generalized atmosphere of crime in Mexico. We're not denying that at all. But that and then saying that this killing roots from a 2003 shooting in Phoenix. It would be more specific than that. It's the retribution against informants. Exactly. From a 2003 shooting in Phoenix where the petitioner was shot in the leg. And it's not exactly clear why there would be retribution. He never actually informed on anyone. When the police came to talk to him, he got shot in the leg. He said, I was shot in the leg, and that was an error. So, again, that's where we're with that. If Your Honor still have any other questions. I think not. Thank you. Thank you. May I ask you whether this reference to the pre-sentence report that I think is in the brief, is that also in the record? As a part of the record, my client, when he was pro se, introduced like a pre-sentencing report that was submitted in connection with his friend's trial for shooting him in the leg. We noted in our briefs that even though that pre-sentencing report was in there, the government nor the IJ ever asked him, well, did you testify there? I don't know the answer to that question. So we don't know if he testified? No. Was he a character witness in that, like in a positive way? The answer to that question is not in the record. Okay. I would like to briefly note that MEVG even expressly states that there is no blanket rule where the victims of gangs cannot qualify as a socially distinct group, and it gives the example, if a gang started targeting homosexuals, they could be a socially distinct group. To answer your question, on the motion to reopen, we submitted numerous materials, and I would just cite to the record in the motion to reopen at AR 238, 230, 213, 201, and 195, in each instance showing this group snitch being discussed as a socially distinct group that is meaningfully distinguished in many ways. I mean, they're killed, their fingers are cut off and stuffed down their throats as a telltale sign that they are a snitch. So on the motion to reopen, the court had clear evidence showing that this group of snitches or informants is socially distinct. Yeah, but was there evidence that he himself was a snitch? Yes, Your Honor. His testimony is sufficient. Even in a reconstruction. I mean, did he say? Does the record show that he himself cooperated with police? The record shows that he spoke to police and that it — which resulted in a police report. There are no follow-up questions about what exactly did he tell the police. But the police report says what he said. It was an accident. No. The police report is — there is no discussion about what the police report states. He goes on to say that he also stated that the person who shot him in the leg did so accidentally. Right. The police report is, I know, referring to something else, which is not in the record. There are no follow-up questions, unfortunately, in the record to demonstrate what exactly is in the police report, how many times did he speak to police, what did he tell them. All right. Thank you. I would like to — Time has expired, and I've given you an extra minute or two. So thank you very much. The case just argued of Lopez v. Sessions is submitted. The next case for argument, United States v. Bell.
judges: Fuentes, McKeown, Bea